Nancy E. Hudgins, SBN 85222
Matthew M. Grigg, SBN 195951
Carol B. Ho, SBN 286972
LAW OFFICES OF NANCY E. HUDGINS
711 Van Ness Ave., Ste 450
San Francisco, CA, 94102
415-979-0100
cbh@hudginslaw.com

Attorneys for Defendants Joe Dobie, Philip Earley, and Gary Loredo

**UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Markee D. Carter,<br><br>    Plaintiff,<br><br>vs.<br><br>Brad Smith, et al,<br><br>    Defendants | Case No.: 3:13-cv-04373-EMC<br><br>**DEFENDANTS DOBIE, EARLEY, AND LOREDO'S REPLY TO PLAINTIFF'S SUMMARY JUDGMENT OPPOSITION** |

### I. Introduction

*Pro Se* Inmate-Plaintiff Markee Carter's Opposition confirms the absence of genuine disputes regarding multiple requisite elements of his deliberate indifference claim. Plaintiff offers only pure speculation which, as a matter of law, cannot prevent summary judgment. Qualified immunity also mandates summary disposition of Plaintiff's deliberate indifference claim because the undisputed evidence confirms other reasonable officials in Defendants' positions likewise could have (and would have) considered their conduct constitutional.

### II. Plaintiff Confirms His "Deliberate Indifference" Claim Is Untenable As A Matter Of Law For Multiple Reasons

A.   <u>Plaintiff Generates No Genuine Dispute Regarding Any "Excessive Risk"</u>

To avoid summary judgment, Plaintiff first needed substantial probative evidence that he was exposed to a constitutionally excessive risk – i.e., a "substantial risk of serious harm." *See Farmer v. Brennan*, 511 U.S. 835, 837 (1994); *see also Helling v. McKinney*, 509 U.S. 25, 36

*Carter v. Smith, et al.*   Case No. 3:13-cv-04373
Defs.' MSJ Reply   Carter/p/Reply MSJ 15a16

1

1 (1993) (explaining the excessive risk calculus includes "a scientific and statistical inquiry into the
2 seriousness of the potential harm and the likelihood that such injury to health will actually be
3 caused by exposure.")

4       Plaintiff argues that his work subjected him to a substantial risk of serious harm, but he
5 offers no evidence to support his speculative insistence. *Cf. Nelson v. Pima Community College*,
6 83 F.3d 1075, 1080-82 (9th Cir. 1996) ("[S]peculation [does] **not** create a factual dispute for
7 purposes of summary judgment") (emphasis added). Plaintiff argues he was exposed to lead or
8 asbestos, but he offers no evidence that he actually was exposed to even a speck of it. *See*
9 *generally*, Pl.'s Opp. & Decl.; *cf.* Pl.'s Depo.,67:13-16, 62:16-20 (revealing he cannot say he has
10 proof asbestos actually was in the mattress factory); *id.* at 60:9-10, 70:24-71:10, 120:2-7 (revealing
11 that the residue disturbed by pressure washing was lint, dirt, and cotton).

12       Plaintiff also argues the hypothesized exposure was "dangerous," but likewise offers no
13 evidence to corroborate that notion. *See generally* Pl.'s Opp. Indeed, Plaintiff offers zero
14 evidence that the likelihood of him experiencing any sort of lead- or asbestos-related harm – let
15 alone "serious" harm – was even as much as one in a billion. *See id.* Lacking so much as a
16 smidgen of "scientific" or "statistical" evidence to support his notion of an excessive risk, Plaintiff
17 has generated no genuine dispute as a matter of law. *See Helling v. McKinney*, 509 U.S. at 36.

18       Plaintiff's inability to generate a genuine dispute regarding even exposure is unsurprising
19 because first:

20     a.    minimal lead paint and asbestos was present in the mattress factory (Earley Decl..,
21           Exs. A-C (ECF No. 33-4), Lead & Asbestos Testing Reports);
22     b.    the only place where minimal asbestos was positively identified was in floor tile
23           adhesive and window glazing putty in the supervisor's office – where inmates did
24           not even work (Earley Decl., ¶9 (ECF No. 33-3) & Ex. B (ECF No. 33-4) at DEF
25           012, 017; Loredo Decl., ¶8 (ECF No. 33-5); Griffin Decl., ¶8 (ECF No. 33-7));
26     c.    the total surface area of the window glazing was ten square feet, and no evidence
27           suggest any inmate worked on or near the floor tiles (Earley Decl., Ex. B at DEF
28           008; Loredo Decl., ¶8; Griffin Decl., ¶8);

|   |   |   |
|---|---|---|
| | d. | testing following the factory closure indicated the wrapping of the overhead steam pipes (which wrapping may have contained asbestos) was in "good" condition (Earley Decl., Ex. B at DEF 008); |
| | e. | no evidence suggests Plaintiff inhaled any asbestos whatsoever – or even that any asbestos fiber possibly present in the factory ever was airborne – such that it even potentially could have been inhaled (*see generally* Pl.'s Opp.); and |
| | f. | no evidence suggests any lead present in the factory ever made its way into or onto Plaintiff – or, for that matter, even that Plaintiff ever came near it. *See id.* |

Further, even if any evidence suggested Plaintiff had come into contact with even a nanogram of lead paint or asbestos – and none does:

- "Most people do ***not*** become ill from the asbestos they are exposed to." U.S. Dept. of Health & Human Services "Asbestos" Fact Sheet (emphasis added).[1]  This is because "[d]isease is ***very unlikely*** to result from a single, high-level exposure, or from a short period of exposure to lower levels." *Id.* (emphasis added); *see also Univ. of Wisconsin-Oshkosh -- "Environmental Health & Safety --Asbsestos."*[2]

- And, "[t]he current reference range of acceptable blood lead concentrations in healthy persons is less than 20μg/dL for adults."[3]  Plaintiff's blood level concentration, by contrast, undisputedly was negative.  *See* Lewis Decl., Ex B at DEF 033–035; *cf.* 29 CFR 1926.62(b) (showing OSHA standards require no action or even monitoring absent employee exposure to a substantial amount of airborne lead; namely a time-weighted average of 30 micrograms per cubic meter of air).

B. <u>Plaintiff's Notion Defendants Knew Of An Excessive Risk Is Baseless Speculation.</u>

To preclude summary judgment, Plaintiff also needed evidence sufficient to persuade a reasonable juror that the substantial risk of serious harm he (supposedly) faced was so obvious that each defendant ***must have*** perceived it and its gravity. *See Lolli v. County of Orange*, 351 F.3d 410, 421 (9th Cir. 2003) (explaining "deliberate indifference" may be shown by circumstantial

---

[1] http://archive.hhs.gov/news/press/2001pres/20010916a.html
[2] http://www.uwosh.edu/ehs/campus-health-and-safety/general-safety/occupational-safety/asbestos-safety
[3] http://www.ijbpr.com/admin/fckeditor/_samples/php/article/619_619_893-903(ijbpr).pdf

evidence *only* when the evidence is sufficient to demonstrate "that a defendant *actually knew* of a risk of harm") (emphasis added); *Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1246-47 (2010); *Beers-Capitol v. Whetzel*, 256 F.3d 120, 138 (3d Cir. 2001) ("[U]sing circumstantial evidence to prove deliberate indifference requires more than evidence that the defendants *should have* recognized the excessive risk and responded to it; it requires evidence that the defendant *must have* recognized the excessive risk and ignored it.") (Emphasis added); *OSU Student Alliance v. Ray*, 699 F.3d 1053, 1071 (9th Cir. 2012); ("[A] constitutional tort plaintiff must allege that every government defendant – supervisor or subordinate – acted with the state of mind required by the underlying constitutional provision.")   Plaintiff offers no such evidence. *See generally* Pl.'s Opp & Decl.

As a preliminary matter, Plaintiff necessarily has not generated a genuine dispute regarding whether any defendant "must have" perceived such a risk because, as demonstrated above, no evidence suggests any such risk even existed. Assuming the existence of such a risk for argument's sake, Plaintiff still would have generated no genuine dispute regarding his claim's "actual knowledge" element because he offers no evidence that any defendant "must have" perceived a risk, let alone a risk of constitutional magnitude. *See generally* Pl.'s Opp & Decl.

Further, Plaintiff repeatedly confirmed during deposition that he does not know, and has no evidence that Defendants perceived any purportedly substantial risk of serious harm. Pl.'s Depo., 112:5-113-4; 77:1-25-78:1; 42:4-6; 58:9-13; 79:12-25 (revealing he has no evidence that Defendants knew the factory contained lead); 67:17-23 (confirming he has no evidence that Defendants knew the factory contained asbestos).  In contrast, the undisputed evidence confirms that Defendants were <u>not</u> aware that the factory even contained asbestos or lead, and thus necessarily could not have perceived that such substances posed any asbestos- or lead-related risk, let alone a risk of constitutional magnitude. *See*, *e.g*., Dobie Decl., ¶¶7, 12; Earley Decl., ¶¶2-7; Loredo Decl., ¶¶4-6, 8-9. Indeed, Mr. Dobie was present during much of the clean-up project, doing essentially the same work and experiencing the same conditions as the inmates. Dobie Decl., ¶¶6, 8, 9. Mr. Earley was assigned to and working at a different prison at all times relevant. Earley Decl., ¶¶2, 7; Loredo Decl., ¶2.

*Carter v. Smith, et al.*  Case No. 3:13-cv-04373
Defs.' MSJ Reply  Carter/p/Reply MSJ 15a16
4

Given the undisputed evidence that the defendants perceived no excessive risk, and/or the stark absence of evidence from which reasonable jurors could conclude otherwise, the law mandates summary judgment for this reason as well. *See*, *e.g.*, *Toguchi v. Chung*, 391 F.3d 1051, 1057 n.4 (9th Cir. 2004) (affirming summary judgment where the plaintiffs had "not raised a material question of fact regarding the obviousness of any of the risks Dr. Chung allegedly ignored.")

C.    Plaintiff Also Generates No Genuine Dispute Regarding Causation Because He Offers Not A Speck Of Evidence That He Sustained Any Harm Due To Any Defendant.

An inmate-plaintiff hoping to prevail on a deliberate indifference claim also must have competent evidence of "harm caused by the indifference." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006); *Van Ort v. Estate of Stanewich*, 92 F.3d 831, 837 (9th Cir. 1996) ("Without proximate cause, there is no §1983 liability.") Plaintiff offers zero evidence of causation. *See generally* Pl.'s Opp.; Pl.'s Decl. (ECF No. 39).

Plaintiff claims to have experienced eye problems, chest pains, coughing, headaches and soreness supposedly attributable to asbestos or lead, but he offers no evidence to corroborate his inadmissible lay supposition. *See* Pl.'s Opp.; *cf. Orr v. Bank of America*, 285 F.3d 764, 773 (9th Cir. 2002) ("A district court may only consider admissible evidence in ruling on a motion for summary judgment.")  This evidentiary void is unsurprising given Plaintiff's post-incident blood test showed no signs of exposure to lead and lack of evidence that he any asbestos exposure whatsoever. *See* Pl.'s Medical Records, 6/8 Blood Test Results (ECF 33-2, pp. 6-8). Regardless, Plaintiff's baseless insistence is pure speculation which, as a matter of law, "[does] not create a factual dispute for purposes of summary judgment." *Nelson v. Pima Community College*, 83 F.3d 1075, 1081-82 (9th Cir.1996); *see also Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) ("Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment."); *see generally*, Pl.'s Med. Recs. (ECF No. 33-2, pp. 6-21).

In addition, the "inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." *See also Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988).  That

| *Carter v. Smith, et al.* | Case No. 3:13-cv-04373 |
|---|---|
| Defs.' MSJ Reply | Carter/p/Reply MSJ 15a16 |

Plaintiff offers no evidence linking any putative lead or asbestos-related harm to a breach of a duty owed by any defendant also is dispositive. *See id.*

D. <u>Plaintiff Also Offers No Viable Basis For Evading Qualified Immunity's Dispositive Effect</u>

"Courts may not simply stop with a determination that a triable issue of fact exists as to whether prison officials [acted unconstitutionally]; instead, the qualified immunity inquiry is separate from the constitutional inquiry." *Estate of Ford v. Ramirez-Palmer*, 301 F.3d 1043, 1053 (9th Cir. 2002). The "relevant dispositive inquiry" then becomes "whether it would be clear to a reasonable [prison official] that his conduct was unlawful in the situation [with which the defendant was] confronted." *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Thus, a state actor's conduct always is immunized unless "at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that *every* 'reasonable official would have understood that what he is doing violates that right.'" *Ashcroft v. Al-Kidd*, 131 S.Ct. 2074, 2083 (2011), quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987) (emphasis added). Here, no evidence suggests *any* other reasonable official in the defendants' positions would have considered their conduct unconstitutional – let alone that "every" other reasonable official would have done so.

Qualified immunity's application is particularly appropriate in this context because, although the basic constitutional prohibition against deliberate indifference is clear, the point at which a risk of some harm becomes sufficiently substantial for Eighth Amendment purposes is not. By way of instructive analogy, the Ninth Circuit reversed a district court order denying summary judgment when a warden double-celled a mentally ill inmate with a history of cellmate attacks, and the inmate proceeded to attack his next cellmate. *Estate of Ford v. Ramirez-Palmer*, 301 F.3d 1043 (9th Cir. 2002). The Ninth Circuit explained, "[I]t is not sufficient that *Farmer* clearly states the general rule that prison officials cannot deliberately disregard a substantial risk of serious harm to an inmate; here, in addition, it is relevant that neither *Farmer* nor subsequent authorities has fleshed out 'at what point a risk of inmate assault becomes sufficiently substantial for Eighth Amendment purposes.'" *Id.*, at 1051. Given this lack of legal clarity, the court concluded, "it would not be clear to a reasonable prison official when the risk of harm from double-celling psychiatric inmates with one another changes from being a risk of some harm to a substantial risk of serious harm." *Id*.

Similarly, here, no pre-2004 (or current) precedent specifies the point on the risk spectrum at which the putative risks at issue might rise to the level of a constitutionally cognizable "substantial risk of serious harm." *See id.*; *cf. Clairmont v. Sound Mental Health*, 632 F.3d 1091, 1109 (9th Cir. 2011) ("The plaintiff bears the burden to show that the contours of the right were clearly established.").

Plaintiff argues prison officials are not immune from liability when their acts are motivated by malicious intent to deprive prisoners of constitutional rights. Pl.'s Opp., at 7:9-10. However, as is the case with Plaintiff's notion of deliberate indifference, not an evidentiary speck supports Plaintiff's notion of malicious intent. *See generally* Pl.'s Opp. & Decl.

Given the absence of evidence that "every" other reasonable official in each of the defendant's positions would have considered their conduct unconstitutional, qualified immunity mandates summary judgment for this reason as well. *See Ashcroft v. Al-Kidd*, 131 S.Ct. at 2083; *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

## V. Conclusion

Parties may not proceed to trial with pure speculation and yet that is all Plaintiff offers. Given the stark absence of evidence of: (1) any substantial risk of serious harm, (2) any defendant's knowledge thereof, or (3) or any harm whatsoever, let alone harm attributable to a breach of a defendant's duties, and in light of qualified immunity's additional protections, the law mandates summary judgment for four separate reasons.

Respectfully submitted:

Dated:   January 16, 2015             LAW OFFICES OF NANCY E. HUDGINS

                                      */s/ Carol B. Ho*
                                      Carol B. Ho
                                      Attorneys for Defendants Joe Dobie, Philip Earley, and Gary Loredo